# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| MAYRA CHACON, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | Case No. 3:12-cv-00884 |
| v. ) | Judge Aleta A. Trauger |
| ) | Magistrate Judge Bryant |
| CLARKSVILLE POLICE DEPARTMENT ) | |
| and HARRIS K., In their Related Capacities, ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM

The defendants have filed a Motion to Dismiss Amended Complaint or, in the Alternative, Motion for More Definite Statement (Docket No. 14) ("Motion to Dismiss"), to which the plaintiff, Mayra Chacon, has filed a Response in opposition (Docket No. 18), and the defendants have filed a Reply (Docket No. 23). For the reasons set forth herein, the defendants' Motion to Dismiss will be granted in part and denied in part, the claims against the Clarksville Police Department ("CPD") will be dismissed without prejudice, the official capacity claims against CPD Officer Kenrick Harris will be dismissed without prejudice, and Mrs. Chacon's individual claims against Officer Harris will proceed.

## BACKGROUND

### I. Factual Allegations[1]

Mrs. Chacon's claims relate to an incident that occurred on September 9, 2011. On that date, she and other members of her family attended a local festival in Clarksville, Tennessee.

---

[1]Unless otherwise noted, all factual allegations are drawn from the Amended Complaint. (*See* Docket No. 11, Am. Compl.)

1

Mrs. Chacon left the festival to retrieve her van, then drove back to a street corner near the festival to pick up several other members of her family. A CPD Officer approached Mrs. Chacon's van and, apparently believing that Mrs. Chacon was parked illegally, began to yell at her. The CPD officer became verbally and physically abusive: he attempted to forcibly remove her from the van and attempted to take her purse. After Mrs. Chacon's son, who is autistic, attempted to reason with the officer, the officer shouted profanities at him and brandished a Taser. A CPD Sergeant and Mrs. Chacon's husband, who volunteers for a local county sheriff's office, each independently responded to the scene. Mrs. Chacon told the CPD Sergeant and the (as yet) unidentified officer that she intended to file a complaint about the incident, but both CPD officers (*i.e*, the Sergeant and the alleged assaulting officer himself) refused to give her the assaulting officer's name. The assaulting officer then wrote her a ticket for a traffic violation; that ticket identified him as "Harris K." At an unspecified point before filing her Complaint, Mrs. Chacon discovered Officer Harris's identification number to be "5770."[2]

Following the incident, Mrs. Chacon filed a complaint of misconduct with the CPD. On October 26, 2011, the CPD informed Ms. Chacon by letter that it had conducted an internal investigation and found no misconduct by the officer involved in the incident. The letter did not state the offending CPD officer's full name.

---

[2] It is not clear from the record how Mrs. Chacon determined the officer's ID number; it may be that she observed Officer Harris's badge at the time, or that it was written on the traffic ticket. With respect to Officer Harris's name, the original Complaint alleged that the CPD Sergeant had refused to give her the assaulting officer's name unless she permitted that officer to issue her the traffic ticket, which the Sergeant suggested would contain the officer's name. At any rate, the operative point is that, before Mrs. Chacon filed the original Complaint, she HAD identified the officer's last name, first initial, and a specific ID number corresponding to him – information that she included in the Complaint.

2

## II.   Procedural History

On August 29, 2012, Ms. Chacon filed a *pro se* Complaint (Docket No. 1) against "Harris K. Batch #5770" and the "Clarksville Police Department," alleging "[e]xcessive [] force and false arrest." In somewhat broken English, her Complaint broadly described the September 9, 2012 incident.[3] In connection with filing the Complaint, Ms. Chacon filled out separate Summonses to "Harris K.   Batch #5770" (spacing in original) and the "Clarksville Police Department," addressing both summonses to 135 Commerce Street, Clarksville, Tennessee, which corresponds to CPD's office address. (*See* Docket No. 1, Attachment No. 1.) It does not appear that she attempted to serve these Summonses while proceeding *pro se*. On October 3, 2012, counsel appeared on Mrs. Chacon's behalf (*see* Docket Nos. 4 and 5) and filed executed versions of the Summonses that Mrs. Chacon had previously filled out, purporting to reflect service (by Mrs. Chacon's counsel) of the Complaint by certified mail on October 1, 2012. (Docket Nos. 6 and 7.)

On October 23, 2012, Mrs. Chacon (now represented) filed an Amended Complaint.[4] The Amended Complaint named the CPD and "Harris K." as defendants "in their related capacities",[5] alleging that "Defendant Harris K., whose batch number is 5770 . . . was a police

---

[3]*See, e.g.*, Compl. at p. 4. ("He unlock my door hit me and grab me by the arm and start pull me out the van . . . ."; "The policeman, told me shut the fuck up. I'm the officer, I'm the law, I'm the authority here, and the one have the power, you shut the fuck up, I can do what ever I want with you, and I can put you on jail right now, if you don't do what I said."; "At this point. I'm afraid, I'm completely sick, my stomach is up set, my legs are shacking. I can't move.")

[4]Just before Mrs. Chacon filed the Amended Complaint, the defendants had filed a Motion to Dismiss or, in the Alternative, for a More Definite Statement. The Amended Complaint mooted that motion. (*See* Docket No. 16.)

[5]The court construes the Amended Complaint – as have the parties – as purporting to assert individual and official capacity claims against Officer Harris and a municipal liability

3

officer actively employed by the CPD." (Am. Compl. ¶ 3.) In the Amended Complaint, Mrs. Chacon alleges that both Officer Harris and the CPD are liable under 42 U.S.C. § 1983 for violations of her Fourth and Fourteenth Amendment rights. With respect to the CPD, the Amended Complaint contains only a boilerplate paragraph alleging that her injuries "are attributable to . . . [a] custom or policy adopted by Defendant Clarksville Police Department in inadequately training, supervising, investigating and overseeing its police officers." (*Id*. ¶ 41.)

On November 16, 2012, Officer Harris was personally served with process. (*See* Docket No. 20 (reflecting service of summons addressed to "Kenrick Harris").) On November 21, 2012, Mrs. Chacon purported to serve, by certified mail, a summons issued to "City of Clarksville d/b/a Clarksville Police Department, c/o Honorable Kim McMillan."[6] (*See* Docket No. 24.)

### III. The Defendants' Renewed Motion to Dismiss

On November 5, 2012 – before the renewed Summonses had been executed as to Officer Harris and the "City of Clarksville d/b/a CPD" – the defendants filed a Motion to Dismiss the Amended Complaint or, in the Alternative, Motion for More Definite Statement ("Motion to Dismiss"), with a supporting Memorandum of Law (Docket No. 15). In support of their motion, the defendants argue that Mrs. Chacon's claims should be dismissed as to both defendants for several reasons, as follows:

---

claim against the CPD.

[6]Kim McMillan is the Mayor of Clarksville. Mrs. Chacon argues that her effort to serve Mayor McMillan was timely and, in compliance with Fed. R. Civ. 4, satisfied Tenn. R. Civ. P. 4.04(8). For the reasons stated herein, the court makes no findings with regard to the timeliness or sufficiency of Mrs. Chacon's effort to serve the CPD and/or the City of Clarksville ("City"). Also, although it is not material to the motion (or a subject of argument between the parties), the court will assume that Officer Harris and the CPD were served with copies of the Amended Complaint on November 16 and 21, 2012 respectively.

4

- Municipal Liability Claim Against the CPD: (1) The CPD is not a proper party (*i.e.*, Mrs. Chacon should have sued the City), justifying dismissal under Rules 12(b)(2), (4), (5), and (6); (2) even if the court were to construe the claims against the "CPD" as claims against the City, Mrs. Chacon failed to timely serve the City under Rule 4(j) and Tenn. R. Civ. P. 4.04(8), warranting dismissal under Rule 12(b)(5); (3) even if the court construes the City as a proper party and finds that service on it was effective, the claims against the City are time-barred; and (4) even if the claims against the City are not time-barred, the Amended Complaint articulates only boilerplate allegations concerning municipal liability, justifying dismissal under Rule 12(b)(6).

- Claims Against Officer Harris (both individually and in his official capacity): (1) All claims against him are barred by the statute of limitations because the Amended Complaint does not relate back to the Complaint under Rule 15(c)(1); (2) Mrs. Chacon failed to serve Officer Harris under Rule 4(e), thereby justifying dismissal of all claims against him under Rule 12(b)(4); and (3) the official capacity claim is really a suit against the City, which is not a party.

As an alternative ground for relief, the defendants have also moved for a more definite statement pursuant to Rule 12(e), requesting additional detail concerning the alleged "policy or custom" supporting Mrs. Chacon's deliberate indifference claim.

## ANALYSIS

### I. Municipal Liability and Official Capacity Claims

#### A. Overview

Particularly with respect to the municipal liability and official capacity claims, this case presents some potentially thorny legal issues regarding the application of § 1983 and the court's duties in construing a plaintiff's pleading. These issues at least include: (1) whether the CPD and/or the City is a proper to party to this lawsuit; (2) whether the CPD and/or the City have been properly served with process; and (3) whether the claims against the City and/or the CPD are otherwise timely. Although these intersecting issues might otherwise require an exacting

analysis by the court,[7] such an analysis is not necessary here, because Mrs. Chacon's boilerplate allegations of municipal liability are manifestly insufficient to establish a claim against the City under the Rule 12(b)(6) standard, in any case.

## B. Standard of Review

In deciding a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require that a plaintiff provide "'a short and plain

---

[7]Although the Sixth Circuit has not squarely addressed the issue, federal district courts have held that many municipal police departments within Tennessee are not proper parties to a § 1983 suit, although the issue can present a department-specific inquiry. *See, e.g.*, *Mathes v. Metro Gov't of Nashville & Davidson Cnty.*, No. 3:10-cv-0496, 2010 WL 3341889, at *2 (M.D. Tenn. Aug. 25, 2010) (collecting cases); *see also Estep v. City of Somerset, Ky.*, 2010 WL 5391909, at *8-*9 (E.D. Ky. Dec. 21, 2010 (finding that whether police department was "proper" defendant required a department-specific inquiry). Even if the CPD indeed is not a proper party, the court would be faced with another threshold question: if the City is not specifically named as a defendant, should the court simply dismiss all claims asserted against the CPD or, in the alternative, construe the City as a party and address the sufficiency of those claims on their merits? *Compare Moore v. Chattanooga Police Dep't*, No. 1:08-cv-174, 2008 WL 3896114, at *3 (E.D. Tenn. Aug. 19, 2008) (in *pro se* lawsuit, dismissing claims against police department without analyzing their sufficiency); *with Matthew v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) (construing official capacity suit against officer as suit against Jefferson County and addressing merits under applicable municipal liability standard). Moreover, in the cases cited by the parties here, it does not appear that, where the district court construed the local government entity as a party, the issue of service on the local government entity (via its constituent department) was even disputed.

Of course, these issues can become largely academic if, unlike here, the local government entity has already been named as a separate party, in which case municipal liability claims against a department of that entity and/or official capacity claims against one of the entity's employees are essentially redundant of claims that are already in the case. *See, e.g.*, *Pruitt v. Lewis*, No. 06-2867, 2007 WL 4293037, at *2 (W.D. Tenn. Dec. 6, 2007); *Mathes*, 2010 WL 3341889, at *3; *Obert v. The Pyramid*, 381 F. Supp. 2d 723, 725 n.1 (W.D. Tenn. 2005).

6

statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957) (quoting Fed. R. Civ. P. 8(a)(2)). The court must determine whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). To establish the "facial plausibility" as required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[threadbare] recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949-50, 173 L. Ed. 2d 868 (2009).

## C. Applicable Law

Section 1983 provides a private cause of action for deprivations of rights provided by the United Constitution or federal law. *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617, 99 S. Ct. 1905, 60 L. Ed. 2d 508 (1979). To show a claim under § 1983, a plaintiff must show: (1) deprivation of a right secured by the United States Constitution or federal law; and (2) that the deprivation was caused by a "person" acting under color of state law. *Savoie v. Martin*, 673 F.3d 488, 493-44 (6th Cir. 2012).

Municipalities are "persons" for purposes of § 1983 liability. *Monell v. Dep't of Social Servs. of the City of New York*, 436 U.S. 658, 690, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).

7

However, municipalities cannot be held liable pursuant to § 1983 under a theory of *respondeat superior*. *Id.* at 691; *Bd. of Cnty. Cmmr's v. Brown*, 520 U.S. 397, 403, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997) ("We have consistently refused to hold municipalities liable under a theory of *respondeat superior*."). Instead, "a plaintiff seeking to impose liability on a municipality under § 1983 [is required] to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Brown*, 520 U.S. 403. As explained in *Brown*:

> [I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

520 U.S. at 404.; *see also Slusher v. Carson*, 540 F.3d 449, 456-57 (6th Cir. 2008).[8]

**D.    Application to Municipal Liability Claims**

Here, the Amended Complaint contains only a boilerplate paragraph relating to municipal liability. The plaintiff appears to argue that the September 9, 2011 incident standing alone could support a finding of municipal liability, a position for which she has cited no supporting authority. To the contrary, the defendants have cited cases in which courts have held that boilerplate allegations premised on a single incident of alleged brutality – *i.e.*, the incident that caused the plaintiff's injury – are typically insufficient to state a claim, thereby justifying

---

[8]For example, with respect to a failure to train theory, the municipality's failure must amount to deliberate indifference to the rights of persons with whom the police come into contact, including a showing that the municipality has ignored a history of abuse, and was on clear notice that its training was deficient. *Slusher*, 489 U.S. at 388. Similarly, a failure to investigate and punish responsible parties can also support a deliberate indifference claim, where it is shown that the official policy of the municipality did not require adequate investigation and/or discipline of responsible officers, amounting to a policy of "ratification of the illegal acts" complained of. *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1248 (6th Cir. 1989).

dismissal under Rule 12(b)(6). *See, e.g.*, *Birgs v. City of Memphis*, 686 F. Supp. 2d 776, 780 (W.D. Tenn. 2010) (dismissing claims under Rule 12(b)(6), because, "[s]tripped of legal language, Plaintiff's Complaint contains no facts that could plausibly lead one to believe that the City deliberately ignored a history of abuse by officers in the Memphis Police Department [, . . . and] fails to allude to any incident of brutality other than the one Birgs allegedly suffered"); *Johnson v. Gannon*, No. 3:09-0551, 2010 WL 1658616, at *4 (M.D. Tenn. Apr. 23, 2010) (dismissing municipal liability claim, where plaintiff simply made a "formulaic recitation of the elements of a failure to train claim") (internal quotation omitted); *see also Thomas v. City of Chattanooga*, 398 F.3d 426, 432-33 (6th Cir. 2005) (citing *Monell*, 436 U.S. at 694) (if jury could infer a municipal-wide policy of condoning excessive force based solely on one instance of potential misconduct, it "would result in the collapsing of the municipal liability standard into a simple *respondeat superior* standard," which "has been forbidden by the Supreme Court"); *Okolo v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, --- F. Supp. 2d ---, 2012 WL 3779475, at *8 (M.D. Tenn. Aug. 30, 2012) (dismissing conclusory allegations that defendant Metro Nashville was liable for failure to screen, train, supervise, or discipline assaulting officer). Thus, even assuming *arguendo* that the City is an appropriate proper party that has been timely and properly served – issues on which the court makes no findings – the court finds that the Amended Complaint does not contain sufficient allegations to state a claim for municipal liability against the City. Therefore, the municipal liability claim will be dismissed without prejudice.

    **E.    Official Capacity Claims Against Officer Harris**

"[A]n official capacity suit is, in all respects other than name, to be treated as a suit

9

against the entity. It is *not* a suit against the official personally, for the real party in interest is the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989). With respect to this recognized rule, the parties dispute whether the court should regard the City as a proper party to this lawsuit as to the official capacity claims, including whether the City was properly and timely served with the Complaint and/or Amended Complaint. Again, the court need not reach these issues because, even assuming *arguendo* that service was timely and proper on an appropriate party, the Amended Complaint fails to articulate a basis for municipal liability for the same reasons discussed in the previous section. Accordingly, the official capacity claims against Officer Harris, which are tantamount to claims against the City, will also be dismissed without prejudice.[9]

## II.     Individual Claims Against Officer Harris

With respect to the individual claims against Officer Harris, the defendants argue that the claims should be dismissed because they are barred by the statute of limitations and/or because Mrs. Chacon failed to timely serve the Complaint and/or Amended Complaint on Officer Harris. Both arguments turn, at least in part, on whether Officer Harris was sufficiently identified in the Complaint.

The statute of limitations applicable to a § 1983 action is the state statute of limitations applicable to personal injury actions under the law of the state in which the § 1983 claim arises. *Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007). Here, the

---

[9]Because the municipal liability claim fails under Rule 12(b)(6) without regard to whether the City is identified as a party by name, Mrs. Chacon's alternative request for leave to amend the Amended Complaint to name the City is moot.

parties do not dispute that the Tennessee default one-year statute of limitations, Tenn. Code Ann. § 28-3-104 (2012), applies to Mrs. Chacon's § 1983 claims, nor do they dispute that Mrs. Chacon's cause of action accrued on September 9, 2011.

Mrs. Chacon, proceeding *pro se*, filed her Complaint on August 29, 2012, within the one-year of statute of limitations. On October 23, 2012, more than one year from the underlying incident, Mrs. Chacon (represented by counsel) filed the Amended Complaint. The defendants do not dispute that Mrs. Chacon personally served Officer Harris with the Amended Complaint on November 16, 2012, within 120 days of the date on which this case was originally filed. *See* Fed. R. Civ. P. 4(e)(2)(A) (personal service sufficient) and 4(m) (120-day limit). However, the defendants argue, that, for purposes of Rule 15(c), the claims asserted in the Amended Complaint do not relate back to the original date of filing because Officer Harris purportedly was not named in the original Complaint.

The defendants urge the court to construe the original Complaint, which identified "Harris K. Batch #5770" as a named defendant, as relating to an "Officer Batch" (*i.e.*, an officer with the last name "Batch"), which is a name that does not correspond to any member of the CPD. The defendants' position is based on a tortured (and essentially disingenuous) reading of the original Complaint. It is readily evident to the court that Mrs. Chacon, who was proceeding *pro se* at the time, identified the defendant in the Complaint as officer "Harris [,] K.," a CPD officer with a numerical "batch" identifier of "#5770." The defendants do not even dispute that the number "5770" actually corresponds to officer Kenrick Harris (*i.e.*, Officer "Harris, K."), nor do they offer any explanation as to what Mrs. Chacon could have meant by including "5770" in

11

the Complaint caption, other than as an identification number *specific to Officer Harris*.[10]  By the same token, the court does not construe the slight adjustment in the case caption as a relevant "change in the naming of the party" for purposes of Rule 15.  Indeed, officer "Harris K." – corresponding to CPD Officer "Harris, K[enrick]" – is identified by the same "last/first" designation in both the Complaint and Amended Complaint, and is identified by his badge number in both pleadings.[11]  There is simply no reasonable dispute that the Complaint and the Amended Complaint relate to and name the same person.[12]  Indeed, in their Reply, the defendants do not even address Mrs. Chacon's persuasive arguments as to why the Amended Complaint should relate back.

Accordingly, the court finds that the Amended Complaint relates back to the original

---

[10]Mrs. Chacon's counsel has represented that Mrs. Chacon utilized the term "batch" because that is how the Montgomery County Sheriff's Department, where Mrs. Chacon's husband serves as a reserve officer, refers to individual officer identification numbers.  Mrs. Chacon's counsel has also represented that the CPD refers to the individual identification numbers for its officers as "pin" numbers, and that the "POST Commission" (presumably referring to the Tennessee Peace Officers Standards and Training Commission) was able to identify Officer Harris when supplied with the identifier "batch number 5770."  Whatever the case, the operative points are that (1) the CPD does not dispute that #5770 specifically corresponds to Officer Harris, and (2) it is readily evident that, when coupled with the officer's last name and first initial, Mrs. Chacon's use of that number – whether referred to as a badge number, batch number, pin number, or some similar term – was intended to identify a specific law enforcement officer within the CPD, plainly should have been construed as identifying Officer Harris, and (apparently) did in fact identify him accurately.

[11]The defendants' citations to a number of cases involving "John Doe" defendants are inapposite, because this case does not involve a "John Doe" placeholder for a defendant not identified until after 120-day window for service under Rule 4 expired.  *See, e.g.*, *Smith v. City of Akron*, 476 F. App'x 67, 67, 68-69 (6th Cir. 2012).

[12]Mrs. Chacon's counsel also makes a number of unsworn representations about the alleged "obstructionist actions" of the defendants in preventing Mrs. Chacon from identifying Officer Harris by his full name.  The court does not rely on these representations, although, if supported by sworn declarations, they may have provided additional support for Mrs. Chacon's position.

Complaint. Because Mrs. Chacon timely and properly served Officer Harris in compliance with Rule 4 – *i.e.*, by personal service within 120 days of the original Complaint – the individual claims asserted against Officer Harris in the Amended Complaint are not barred by the one-year statute of limitations. Thus, dismissal of those claims under Rule 12(b)(4) is not warranted.

## CONCLUSION

For the reasons expressed herein, the defendants' Motion to Dismiss will be granted in part and denied in part. The municipal liability claims against the CPD and the official capacity claims against Officer Harris will be dismissed without prejudice. The individual claims against Officer Harris will proceed.

An appropriate order will enter.

ALETA A. TRAUGER
United States District Judge